WILMOT A. HURSEY v. ADAM MARTY, Sheriff, and Others.[1]

June 25, 1895.

Nos. 9362—(185).

Sheriff's Bond—Liability of Sureties for Wrongful Seizure.

The sureties upon the official bond of a sheriff, conditioned for the faithful performance of the duties of his office, are liable for his acts in seizing, upon a writ of attachment, property of the debtor which is exempt, and refusing to release it upon demand of the debtor.   The act,

[1] Reported in 63 N. W. 1090.

although unlawful, is one done by the sheriff under color and by virtue of his office, and constitutes a breach of the condition of the bond.

**Same—Judgment against Sheriff as Evidence.**

> A judgment against the sheriff for acts which were a breach of the condition of his official bond is only prima facie evidence against the sureties. Beauchaine v. McKinnon, 55 Minn. 318, followed.

Appeal by defendants John G. Nelson and August Booren from a judgment of the municipal court of Stillwater, entered in pursuance of an order for judgment by Jack, J.   Reversed.

*Nathan H. Chase, Comfort & Wilson,* and *M. H. Boutelle,* for appellants.

*James N. Castle,* for respondent.

MITCHELL, J.   This was an action upon an official bond executed by defendant Marty as principal and the other defendants as sureties, conditioned that Marty should "well and faithfully in all things perform and execute the duties of sheriff according to law during his continuance in office, without fraud, deceit, or oppression."   The complaint, which is unnecessarily long, is very far from being a model pleading, being quite prolix on immaterial matters, but very scant in its allegations of material facts.   But, as there must be a reversal on points that go to the merits of the case, we will not consider those criticisms upon the sufficiency of the complaint, which, if well taken, can be cured by amendment.

The allegations of the complaint, so far as here material, are that, in an action in which the Finance Company of Pennsylvania was plaintiff and the plaintiff in the present action and two others, as copartners, were defendants, an attachment was issued, and placed in the hands of the defendant Marty as sheriff; that under the pretended authority of this attachment he levied on certain exempt property of the present plaintiff; that plaintiff notified the sheriff that this property was his individual, exempt property, and demanded a return of it, which the sheriff refused; that thereupon the plaintiff brought an action against Marty for damages for the wrongful taking of the property, in which, on a trial upon the merits, he recovered a verdict for $392 damages, upon which a judgment was rendered against the sheriff for $409.85 damages and costs.

The defendants, in their answer, admitted the official character of

Marty; the issuance to him of the writ of attachment as stated in the complaint; that under the pretended authority of such writ, he, as sheriff, levied upon the property described in the complaint; that plaintiff notified Marty that the property was his individual, exempt property, and demanded a return of it; and that plaintiff subsequently brought an action against Marty, and obtained a verdict therein, as alleged in the complaint. The other allegations of the complaint were put in issue by either general or special denials. The court ordered judgment against the defendants on the pleadings, and the correctness of this ruling is the only question presented by this appeal.

The first proposition advanced by the defendants going to the merits of the case is that the seizure by a sheriff, upon a writ of attachment against one person, of the goods of another, is not a breach of the condition of his official bond for which his sureties are liable. While the principle involved may be the same, yet this is not the precise question presented by the record. The property seized did belong to one of the defendants in the writ, but, according to the complaint, was property upon which the sheriff had no right to levy, because it was exempt. While a contrary view has been maintained or received some support in the decisions of a few states, yet the great weight of authority is to the effect that the sureties upon the official bond of a sheriff or constable, conditioned for the faithful performance of the duties of his office, are liable for his taking the property of one person upon a writ directing him to take the property of another person; that such an act, although unlawful, is an act done by the officer in his official capacity, under color and by virtue of his office.

This question is discussed, and the authorities upon it collated quite fully, in Brandt on Suretyship, § 566, and Lammon v. Feusier, 111 U. S. 17, 4 Sup. Ct. 286. See, also, State v. Jennings, 4 Ohio St. 419, and Turner v. Sisson, 137 Mass. 191. We may add that the courts of New York and of Wisconsin are sometimes—erroneously, as we think—spoken of as holding a contrary doctrine. A few of the earlier cases in New York did hold as suggested, but they seem to have been overruled by People v. Schuyler, 4 N. Y. 173, which, so far as we know, has ever since been considered as settling the law in that state. People v. Lucas, 93 N. Y. 585, although recognizing the

authority of People v. Schuyler, was distinguished from it by reason of the special and limited language and purpose of the bond under consideration. Gerber v. Ackley, 32 Wis. 233, and 37 Wis. 43, is sometimes cited as authority for the doctrine that the sureties are not liable in such a case, but an examination will show that both of the decisions in that case were based upon the fact that there was no sufficient averment in the complaint that, in seizing the property, the officer was acting in his official capacity, under a legal writ, or even that he had any writ in fact.

But, whatever may be said of the case where, upon a writ against the property of one person, the officer seizes the property of another, we do not think that there can be any question but that, if an officer, under and by virtue of a writ of attachment or an execution, seizes property of the debtor himself which is exempt, and, upon the right of exemption being duly asserted, refuses to release the property, this would constitute a breach of the condition of the bond (conditioned as this bond was), for which the sureties would be liable. See State v. Jennings, supra.

2. But there is a ground upon which the action of the trial court in ordering judgment on the pleadings was clearly erroneous. It can be sustained only upon the hypothesis that the judgment against the principal, Marty, is conclusive evidence against the sureties of every fact which it was necessary to establish in order to the recovery of such a judgment.

This general subject was considered at some length in Pioneer S. & L. Co. v. Bartsch, 51 Minn. 474, 53 N. W. 764, and it was there said that logically there was no middle ground; that a judgment against a principal was either conclusive or no evidence at all against a surety; and that logically it was evidence of nothing against the surety except of the fact of its recovery, except where, from the nature of his undertaking, he has expressly or by implication from the position which he has assumed with reference to pending litigation, stipulated to be bound by the result of the litigation by which the liability of his principal shall be fixed, and that in such cases the judgment against the principal would be conclusive against the surety, because he had so contracted. But in Beauchaine v. McKinnon, 55 Minn. 318, 56 N. W. 1065, in deference to the great weight of authority and to considerations of practical convenience, we held,

although conceding that the rule was not strictly logical, that a judgment against a principal in an official bond, recovered for acts or omissions which were a breach of the condition of the bond, is prima facie, but only prima facie, evidence against the sureties. This is the rule applicable to the present case.

Inasmuch as the answer of the defendants put in issue the facts constituting the alleged breach of the condition of the bond, it was their right to be fully heard on the merits, and to introduce any evidence they had tending to prove that the condition of the bond had not been broken, or, if it had, going to the measure of plaintiff's damages.

The defendants ask, not only that the judgment against them be reversed, but also that, because of the alleged insufficiency of the complaint, judgment in their favor be ordered. As the alleged defects in the complaint are all susceptible of amendment, and as the trial judge might, and probably would, have allowed such amendments to be made had he been of the opinion that they were necessary, we will simply reverse the judgment.

Judgment reversed.